# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2025

Lyle W. Cayce
Clerk

No. 24-10275

Gustavo Santander,

*Plaintiff—Appellant*,

*versus*

Jose Salazar,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-106

_____

Before Haynes, Duncan, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

After a dispute outside a Fort Worth, Texas bar, Jose Salazar, an off-duty police officer, allegedly knocked out Gustavo Santander and then arrested him for public intoxication once he came to. Santander brought § 1983 claims for excessive force, false arrest, and malicious prosecution. Asserting qualified immunity, Salazar moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed Santander's claims because Santander failed to proffer analogous cases in support of them. We affirm in part and reverse in part.

No. 24-10275

## I.

The parties offer dueling accounts of the incident in question. But "[b]ecause this case arises from a motion to dismiss, we accept as true the factual allegations in [Santander's] complaint." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011).

One evening in July 2022, Gustavo Santander and his wife arrived at Texas Republic, a sports bar in Fort Worth, Texas. Jose Salazar, an off-duty police officer employed by the Fort Worth Police Department (FWPD), was working that night as a security guard for Texas Republic. Salazar was wearing his FWPD-issued badge and service weapon that evening.

Santander "engaged in a verbal conversation with staff members at Texas Republic as he was attempting to go down a flight of stairs and into a parking lot to wait for his wife." But for reasons not alleged, the staff members prevented Santander from going down those stairs. Santander alleges that as he turned around to look for a different set of stairs, Salazar pushed him from the back "suddenly and without provocation," causing him to fall to the ground "face first onto the concrete."

After getting up, Santander approached Salazar "to ask why he was just shoved to the ground." Salazar then grabbed Santander's arm, and in reaction, Santander "pushed" Salazar away. Salazar then allegedly took Santander down, "punch[ing] [him] several times in the face and head" and causing him to lose consciousness. Salazar subsequently handcuffed Santander and arrested him on a charge of public intoxication.

That charge was later dismissed after Salazar failed to appear during the court hearing. Santander filed a complaint with FWPD regarding Salazar's conduct. The ensuing FWPD internal affairs review concluded that Salazar had violated departmental rules when he assaulted Santander and "falsified the arrest affidavit," which averred that Santander had taken

2

a fighting stance outside the bar and omitted the fact that it was Salazar who began the physical confrontation.  Salazar was eventually terminated by FWPD.

In February 2023, Santander sued Salazar under 42 U.S.C. § 1983, bringing claims for excessive force, false arrest, and malicious prosecution.[1] Salazar answered, denying many of the factual allegations.  He also moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), asserting qualified immunity.

The district court dismissed the case with prejudice, concluding that Santander's complaint failed to allege that Salazar "violated any clearly established right."  The district court faulted Santander for "fail[ing] to cite *any* legal authority" for his excessive force claim, and for failing to offer relevant analogous authority to support his false arrest and malicious prosecution claims.  Santander now appeals, arguing that the district court erred and that a substantial body of case law supports his claims.

## II.

"We review a district court's decision on a [Rule] 12(b)(6) motion de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."  *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)).  To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[The

---

[1] Santander also sued Texas Republic for negligent hiring, supervision, and retention.  The district court dismissed that claim, and Santander has not appealed its dismissal.

plaintiff's] well-pleaded factual allegations enjoy a presumption of truth." *Pena v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018). But the court does not accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III.

We first address the pleading standard that the district court articulated as it dismissed Santander's claims. Specifically, it was erroneous for the district court to insist that Santander substantiate his claims by alleging relevant legal authority in his complaint. Next, assessing his claims under the proper standard, we conclude that Santander's excessive force claim survives Salazar's assertion of qualified immunity, at least at the pleading stage. His remaining claims do not.

### A.

In dismissing his claims with prejudice under Rule 12(b)(6), the district court faulted Santander for failing to "carry his burden to show that [Salazar's] conduct violated any clearly established right." Acknowledging that the case was "potentially righteous," the district court nonetheless held that Santander's claims failed because he did not offer "readily available authority" to support them. The district court went so far as to list several cases that Santander could have used to support his excessive force claim, but then determined that Santander's "failure to cite an analogous authority doom[ed] his case." But the district court's approach flies in the face of this court's precedents.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735.

A court must "carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986)). To be sure, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate" at the motion to dismiss stage. *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)).

However, "an assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Thus, "[an] immunity-from-suit interest does not require that the plaintiff's original complaint exceed the . . . standard of Rule 8" of the Federal Rules of Civil Procedure. *Id.* "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead '*facts* which, if proved, would defeat [the] claim of immunity.'" *Guerra*, 82 F.4th at 285 (emphasis added) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)). And the district court must "do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)).

The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to "identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 510 U.S. 510, 514 (1994). The operation of such a rule would be unpredictable in advance of the district court's adjudication and would "simply release[ ] defendants because of shortages in counsel's or the court's legal research or briefing." *Id.*

No. 24-10275

This case shows the soundness of the Court's directive in this regard. The district court's scrutinizing Santander's pleading for relevant legal authority—an approach effectively requiring plaintiffs to brief legal authority in support of their claims within initial pleadings in anticipation of a qualified immunity defense—was erroneous. At the Rule 12(b)(6) stage, the district court was only to assess whether Santander's complaint alleged sufficient facts to defeat qualified immunity. *Guerra*, 82 F.4th at 285. The court erred in dismissing Santander's claims because Santander failed to proffer supportive legal authority in his complaint.[2]

## B.

Nonetheless, this court may affirm "if the result is correct although the [district] court relied upon a wrong ground or gave a wrong reason." *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 630 (5th Cir. 2021) (quoting *NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 722 (2001)). Therefore, we review Santander's complaint de novo using the proper pleading standard to assess whether his claims survive Salazar's motion to dismiss and assertion of qualified immunity. *See Ferguson*, 802 F.3d at 780.

As an initial matter, Santander has shown that "the alleged deprivation [of his rights] was committed by a person acting under color of state law" for his § 1983 claims. *West v. Atkins*, 487 U.S. 42, 48 (1988). Santander alleges that Salazar, though "working as hired security for Texas Republic at the time of the assault," was wearing a FWPD badge and carrying

---

[2] The district court's order is also wrong on its own terms. The court stated that "[i]n responding to Defendant's motion to dismiss, Plaintiff failed to cite *any* legal authority defining the contours of the right to be free from excessive force." But Santander's response to Salazar's Rule 12(b)(6) motion expressly cites several cases in support of each of his claims.

a gun when he "assaulted . . . and arrested" Santander, handcuffed him, and took him to jail. He was off duty, but "whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation." *Gomez v. Galman*, 18 F.4th 769, 776 (5th Cir. 2021) (quoting *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991)). Rather, the court considers: (1) "whether the officer misused or abused his official power[,]" and (2) "if there is a nexus between the victim, the improper conduct, and the officer's performance of official duties." *Id.* (quoting *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464–65 (5th Cir. 2010)). At least as alleged, those considerations are met, such that Salazar was acting as a police officer under color of law.

As for the substance of Santander's claims, the court determines whether the plaintiff has alleged a plausible constitutional violation before turning to the qualified immunity analysis. *Arnold*, 979 F.3d at 269. On that score, Santander was required to "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Santander's description of the incident in the complaint leaves much to be desired, raising several unanswered questions about the parties' confrontation. Though Salazar's answer to the complaint purports to fill some of the gaps, "[w]e assess a Rule 12(b)(6) motion only on the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Ferguson*, 802 F.3d at 780 (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)) (internal quotation marks omitted). Even so, the court need not accept as true Santander's "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge*, 90 F.4th at 843 (5th Cir. 2024).

These precepts in mind, we turn to Santander's claims—(1) excessive force, (2) false arrest, and (3) malicious prosecution—and assess whether each passes muster under Rule 12.

**1.**

A plaintiff asserting an excessive force claim under the Fourth Amendment must demonstrate: "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).  Santander alleges that Salazar "violently" shoved him from behind "without provocation" while his back was turned, causing him to "fall face first onto the concrete."  He asserts that Salazar then grabbed his arm and punched him "several times in the face and head," causing him to "lose consciousness."  The confrontation and the subsequent arrest transpired despite Santander purportedly not having consumed any alcohol that evening.  Santander underscores the unreasonableness of Salazar's actions by alleging that Salazar was fired by FWPD for his conduct. These facts are sufficient to state a plausible excessive force claim.

Given the plausibility of Santander's claim, we consider whether the alleged facts, if true, could defeat qualified immunity—specifically whether the right that Santander asserts was "clearly established."  *See Anderson*, 845 F.3d at 599.  A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  The right may not be defined at a "high level of generality" because the question is "whether the violative nature of particular conduct is clearly established."  *al-Kidd*, 563 U.S. at 742.  Thus, this inquiry "must be undertaken in light of the specific context of the case,

not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). This inquiry does not require "a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al–Kidd*, 563 U.S. at 741).

"The clearly established inquiry is [especially] demanding" for excessive force claims. *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1167 (5th Cir. 2021) (citing *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019)). Because excessive force "is an area of the law 'in which the result depends very much on the facts of each case,' . . . police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104–05 (2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 13).

Relevant here, it is clearly established that "officers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Spiller v. Harris Cnty., Texas*, 113 F.4th 573, 578 (5th Cir. 2024); *see also Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."). Though Santander's complaint does not illuminate the nature of the "verbal conversation" between Santander and Texas Republic staff that led to his altercation with Salazar, Santander alleges that he had turned to "go to a different set of stairs" before being "violently shoved" in the back "suddenly and without provocation." Salazar thus initiated the physical confrontation when Santander had his back turned and was not resisting. Salazar's doing so, if proven, would violate a clearly established right based on the above precedents. And because the initial shove alone supports a plausible excessive force claim, we need not further assess at the pleadings stage whether excessive force was present for

the whole encounter. *Cf. Lytle v. Bexar County*, 560 F.3d 404, 413 (5th Cir. 2009) ("An exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."). Accordingly, this claim survives Salazar's Rule 12(b)(6) motion and his assertion of qualified immunity.

**2.**

A § 1983 false arrest claim requires that the plaintiff show that the arresting officer lacked probable cause. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)).

Santander asserts that "Salazar had no reasonable suspicion or probable cause to investigate or arrest Plaintiff on a charge of [p]ublic [i]ntoxication." He also points to the FWPD internal investigation's conclusion that Salazar violated FWPD rules in arresting Santander as supporting his claim for false arrest. While this court need not accept as true Santander's proffered legal conclusion that Salazar lacked probable cause, *see Hodge*, 90 F.4th at 843, Santander's other allegations enjoy a presumption of truth, *Pena*, 879 F.3d at 620. And while Salazar's "violat[ion] [of] departmental policies does not deprive him of qualified immunity" in itself, "the fact that [Salazar] allegedly failed to follow departmental policy makes his actions more questionable." *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014).

Even so, Salazar's motion to dismiss does not rise or fall based on the disputed public intoxication charge. "[A]n arrest is lawful if the officer had probable cause to arrest for *any offense*, not just the offense cited at the time

of arrest or booking." *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018) (emphasis added); *see also Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020) (An officer can "justify the arrest by showing probable cause for any crime."). Here, *Santander* affirmatively alleges that he resisted Salazar's attempt to subdue him. When Santander "approached" Salazar after being shoved to the ground, ostensibly to "deesclat[e] the situation," Salazar grabbed his arm. *See California v. Hodari D.*, 499 U.S. 621, 625 (1991) (stating that "mere grasping" is sufficient to constitute arrest). As pled in his complaint, Santander then "attempted to take his arm out of [Salazar's] grasp and pushed [Salazar] away from his person." "[P]ulling [one's] arm out of [an officer's] grasp is enough, standing alone, to constitute resisting arrest." *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013). And "the act of resisting can supply probable cause for the arrest itself." *Id.* at 376.

A caveat is that Santander's alleged resistance may arguably have been justified, if his allegations are true. Under Texas's self-defense law:

> The use of force to resist an arrest or search is justified:
>
> (1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and
>
> (2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

Tex. Penal Code § 9.31(c). Santander alleges that Salazar "suddenly and without provocation . . . violently shoved [Santander]" before Santander even approached him. Santander's resistance thus occurred only after Salazar had allegedly "use[d] . . . greater force than necessary to make the arrest." *Id*. § 9.31(c)(1). Viewed most favorably to Santander, his actions could amount to justified self-defense in response to an unprovoked physical

attack, such that Salazar may have lacked probable cause to arrest Santander for resisting. So, Santander has plausibly stated a false arrest claim.

However, even if plausible, his allegations fail to overcome Salazar's assertion of qualified immunity. That is because we find no precedent that clearly establishes "the violative nature of [Salazar's] conduct," *al-Kidd*, 563 U.S. at 742, and Santander offers none. Granted, "[i]t [is] clearly established . . . that '[a]n arrest is unlawful unless it is supported by probable cause.'" *Deville*, 567 F.3d at 166 (quoting *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)). But we look at the "specific context of the case, not . . . a broad general proposition." *Brosseau*, 543 U.S. at 198.

Treating Santander's factual allegations as true, *Santander* escalated the confrontation after Salazar attempted to grab Santander's arm. And it is not clearly established that an officer lacks probable cause to arrest a suspect who not only pulled his arm out of the officer's grasp, but also *pushed* the officer away, even when the officer had initiated the physical confrontation. Put differently, it cannot be said that "every reasonable officer would have understood" that Salazar's arresting Santander, who had escalated the confrontation by pushing Salazar away, lacked probable cause. *See Mullenix*, 577 U.S. at 11. Santander's false arrest claim therefore fails to defeat qualified immunity and was properly dismissed.

**3.**

Santander's claim for malicious prosecution fails for a similar reason. A party asserting a § 1983 malicious prosecution claim must prove an unlawful Fourth Amendment seizure and substantiate the following six elements: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such

proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (citation omitted).

Regardless of whether Santander alleges a plausible claim for malicious prosecution, such a claim cannot overcome qualified immunity. That is because the elements of a § 1983 malicious prosecution claim had not been established at the time of the incident, such that the law was unsettled at the time of Salazar's conduct. *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) ("The second part of the [qualified immunity] inquiry looks to whether the right was clearly established *at the time of the violation*." (emphasis added)).

Before 2022, our court did not recognize a federal claim for malicious prosecution at all. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (en banc) (holding that "'malicious prosecution' standing alone is no violation of the United States Constitution"); *see also Arnold*, 979 F.3d at 270 (stating, in 2020, that "facts amounting to malicious prosecution are properly alleged as part of an actual Fourth Amendment claim, such as unreasonable search or seizure"). In April 2022, however, the Supreme Court expressly recognized a § 1983 malicious prosecution claim in *Thompson v. Clark*, 596 U.S. 36, 42 (2022), effectively abrogating *Castellano*.

But *Thompson* did not "lay out a comprehensive list of the elements for a Fourth Amendment malicious prosecution claim, and largely left the question of elements to the lower courts." *Armstrong*, 60 F.4th at 278. Only in February 2023 did this court articulate the elements of a post-*Thompson* malicious prosecution claim. *Id.* at 279. The alleged incident in this case occurred in July 2022, after *Thompson*, but months before *Armstrong*. Therefore, with regard to Santander's § 1983 malicious prosecution claim, Salazar could not have violated clearly established law because, at the time, there was no clearly established law in this circuit to violate. Santander's

malicious prosecution claim thus fails to overcome Salazar's assertion of qualified immunity.

## IV.

To sum up:  The district court applied an incorrect pleading standard in dismissing Santander's claims.  Properly evaluated, Santander's excessive force claim survives Salazar's motion to dismiss and assertion of qualified immunity.   But Santander cannot show that Salazar violated clearly established law as to either his false arrest or malicious prosecution claim.

Accordingly, we AFFIRM the district court's dismissal of Santander's false arrest and malicious prosecution claims.  We REVERSE the district court's dismissal of Santander's excessive force claim and REMAND for further proceedings consistent with this opinion.